# Richmond

SEABOARD COAST LINE RAILROAD COMPANY V. THOMAS J. WARD.

March 4, 1974.

Record No. 730142.

Present, Snead, C.J., I'Anson, Carrico, Cochran, Harman and Poff, JJ.

*Lewis T. Booker (Eppa Hunton, IV; Hunton, Williams, Gay & Gibson,* on brief), for plaintiff in error.

*Raymond H. Strople (Willard J. Moody; Bernard Miller; Moody, McMurran & Miller,* on brief), for defendant in error.

Per Curiam.

Plaintiff, Thomas J. Ward, filed a motion for judgment against Seaboard Coast Line Railroad Company to recover damages under

the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51 *et seq.*, as amended, for injuries received while working in Seaboard's railroad shop in Portsmouth. Plaintiff received a jury verdict in the amount of $200,000 upon which the trial court entered judgment. We granted Seaboard a writ of error to consider (1) whether negligence of the plaintiff was the sole proximate cause of the injuries as a matter of law, (2) whether there was misconduct on the part of a juror, and (3) whether the verdict was excessive.

Ward, a 57-year old blacksmith who had been employed by Seaboard for about 25 years, and two fellow employees were in the process of cutting steel bars on an electrically driven shearing machine when the clutch of the machine began to slip, and the cutting blade began to skip and jump. Ward proceeded around to the side of the machine, out of the view of his co-workers, in order to throw sand in the clutch to prevent it from slipping. While Ward was throwing the sand, two protruding setscrews on the moving clutch assembly caught his welder's glove and jerked him off the ground. Ward's right elbow was crushed in the machine, and he remained suspended in the air for at least 20 minutes until a machinist dismantled a part of the machine and freed him.

Plaintiff's evidence showed that the shearing machine had been installed in 1915; that it had been a practice since about 1951 to throw sand into the clutch to make the machine operate more efficiently; that Ward had thrown sand into the clutch on occasions for about 15 years but had never seen the protruding setscrews before the accident; and that the shop superintendent had previous knowledge of the dangerous condition of the machine and of the use of sand to prevent the clutch from slipping. Also, on cross-examination, a maintenance shop foreman admitted that he had received complaints about the defective condition of the machine.

Timothy Kenney, a safety engineer called as an expert witness by plaintiff, testified that the usual custom in the "rest of the industry" was to replace protruding setscrews with countersunk screws, and that a hazardous condition existed in Seaboard's machine because of the slipping clutch, the protruding setscrews, and the lack of a protective shield over the clutch.

Seaboard introduced certain railroad safety rules to show the standard of care which should have been exercised by Ward. Included was Rule No. 439, which required employees to shut down machines before attempting to adjust, repair, clean, or oil them.

Seaboard also introduced evidence that the usual practice of machinists was to shut off machines before working on them. Ward introduced safety Rule No. 36g which provided that management would keep shops, yards, and machinery clean and in a safe working condition.

Seaboard argues that Ward's negligence in failing to shut down the shearing machine before working on it was as a matter of law the sole proximate cause of his injuries and that the trial court should, therefore, have set aside the verdict. Seaboard says that *Southern Ry. Co.* v. *Mays*, 192 Va. 68, 63 S.E.2d 720 (1951), *cert. denied*, 342 U.S. 836 (1951), decided under the Federal Employers' Liability Act, is controlling. There, a railroad employee was killed when he negligently and in violation of safety rules stepped in front of a train. This Court reversed the judgment for the plaintiff because the decedent's negligent act was the sole proximate cause of the fatality. In our view, *Mays* is not controlling because the facts in the case at bar are dissimilar.

Under the Federal Employers' Liability Act, Seaboard is liable to plaintiff if his injuries were caused in whole or in part by its negligence. The comparative negligence rule applies and contributory negligence of plaintiff mitigates damages but is not a defense. *Norfolk Southern Ry. Co.* v. *Rayburn*, 213 Va. 812, 816, 195 S.E.2d 860, 864 (1973). If Seaboard was negligent, plaintiff's recovery would be barred only if his negligence was an intervening and the sole proximate cause of his injuries.

Viewing the evidence in the light most favorable to plaintiff, we cannot say as a matter of law that his conduct, if negligent, was the sole proximate cause of his injuries. Or, put another way, given the evidence relating to the defective condition of the machine in question, the length of time it had been permitted to remain in that condition, and the knowledge of Seaboard of the condition, we cannot say as a matter of law that Seaboard's conduct, if negligent, did not cause, in whole or in part, the injuries to plaintiff. These were matters for the jury.

■ Next, Seaboard asserts that the trial court erred in overruling its motion for a mistrial. The motion was based upon an allegedly improper communication between Mrs. Ward (plaintiff's wife) and a juror. Before the recess for lunch on the first day of the trial, the court admonished the jurors not to discuss the case with anyone. During the recess, Mrs. Ward engaged in a three to five minute

conversation with one of the jurors. The conversation took place in plain view in the hallway outside the courtroom. Upon learning of the incident, the trial judge called Mrs. Ward and the juror, Abe Mendelsohn, into chambers and inquired as to the nature of the conversation. Mrs. Ward stated that she did not know Mr. Mendelsohn was a juror. It was determined that the case was not discussed, and that the subject of the conversation, aside from an exchange of pleasantries, was Mr. Ward's preference for eggs sold by Farm Fresh Supermarket, where the juror was employed. The trial court ruled that the conversation was not prejudicial to Seaboard.

*Harris v. Tractor Company,* 202 Va. 958, 121 S.E.2d 471 (1961), is very much in point. In that case, an officer of the defendant company instigated a five minute conversation with a juror outside the courtroom in plain view of the other witnesses and jurors while waiting for court to reconvene. We found the conversation to be harmless because it was "conceived in innocence, casual and foreign to the case under consideration. . . ." 202 Va. at 965, 121 S.E.2d at 476. *See also State Farm Ins. Co. v. Futrell,* 209 Va. 266, 273-74, 163 S.E.2d 181, 187 (1968).

We strongly disapprove of communication between litigants or witnesses and prospective or active jurors, whether occurring before or during trial. However, we find that Ward carried his burden of showing that the conversation was conceived in innocence and was casual and unconnected with the case. We hold, therefore, that the trial court did not abuse its discretion in refusing to grant a mistrial.

Finally, Seaboard contends that the $200,000 verdict was excessive as a matter of law. It argues that, in relation to plaintiff's age and the injuries suffered, the verdict was so out of proportion as to shock the conscience, especially in light of the juror misconduct and the presence of the comparative negligence standard applicable in the Federal Employers' Liability Act.

Ward suffered, among other injuries, a severe comminuted fracture of his elbow joint, involving several bones. The fracture required surgical repair, including the insertion of steel wires and pins to secure the bones.

Ward sustained, among other things, a permanent loss of 35 degrees in flexion and extension of his injured arm, which was left with a permanent deformity and an estimated 16% permanent disability. As a result of his injuries, he was permanently disabled from continuing his occupation as a blacksmith, for which he was receiving gross pay of $9,465.49 per year at the time of the accident.

Considering the seriousness of Ward's injuries, the loss of his wages, his pain and suffering, and his permanent partial disability, we cannot say as a matter of law that the jury's verdict was excessive. *See Edmiston* v. *Kupsenel*, 205 Va. 198, 202, 135 S.E.2d 777, 780 (1964).

The judgment of the trial court will be

*Affirmed.*